IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD.,** <br>    No. 88 Weilai 3rd Road <br>    East Lake High-tech Development Zone <br>    Wuhan, Hubei, 430205, China; and <br><br> **YANGTZE MEMORY TECHNOLOGIES (JAPAN), INC.,** <br>    Daiwa Akasaka Building 4F, <br>    2-14-5 Akasaka, Minato-ku, <br>    Tokyo 107-0052, Japan, <br><br> *Plaintiffs,* <br><br> v. <br><br> **U.S. DEPARTMENT OF COMMERCE,** <br>    1401 Constitution Avenue, NW <br>    Washington, DC 20230; and <br><br> **BUREAU OF INDUSTRY AND SECURITY,** <br>    1401 Constitution Avenue, NW <br>    Washington, DC 20230, <br><br> *Defendants.* | **Civil Action No. 25-2997** <br><br><br><br><br><br><br><br><br> **COMPLAINT** |

## INTRODUCTION

1.  Plaintiffs Yangtze Memory Technologies Company, Ltd. ("YMTC") and Yangtze Memory Technologies (Japan), Inc. ("YMTJ") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking an order requiring Defendant U.S. Department of Commerce ("Commerce Department" or "Commerce") and Defendant Bureau of Industry and Security ("BIS") to release agency records that Plaintiffs requested from Defendants on August 1, 2025, and which have been unlawfully withheld.

2. YMTC is a global leader in the development and production of flash memory chips known as "NAND" chips that are widely used in consumer electronics. Its corporate affiliate YMTJ promotes YMTC products in Japan and South Korea and provides related technical support and customer service in those markets.

3. In December 2022, Defendants issued a final rule adding three dozen entities, including Plaintiffs, to BIS's Entity List (the "Final Rule"). *See* Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022). The Entity List designates foreign persons subject to trade restrictions for exports, reexports, and transfers (in-country) of items subject to the Export Administration Regulations ("EAR"), 15 C.F.R. pts. 730-774.

4. As the Final Rule explains, the Commerce-chaired interagency body known as the End-User Review Committee ("ERC") "makes all decisions regarding additions to, removals from, or other modifications to the Entity List." 87 Fed. Reg. at 77506. Consistent with this, the Final Rule states that "[t]he ERC determined to add" 33 entities other than Plaintiffs to the Entity List. *See id.* at 77506-07. But for Plaintiffs (and one other unrelated party), the Final Rule stated instead that "***[t]he agencies represented on*** the ERC determined to add" them to the Entity List—an anomalous phrase that obscured the identity of the body (or bodies) that made that determination. *See id.* at 77506 (emphasis added). The Final Rule also did not identify any specific conduct by Plaintiffs as the grounds for adding them to the Entity List, despite doing so for those other 33 entities. Instead, the Final Rule stated only that Plaintiffs allegedly "present[ed] a risk of diversion" of U.S. exports to other listed parties. *Id.*

5. Since the Final Rule was issued, Plaintiffs have submitted formal requests for removal from the Entity List; produced substantial volumes of documents to address whatever

concerns prompted Defendants to add Plaintiffs to the Entity List; and detailed YMTC's history of commitment to U.S. export control compliance and the measures that YMTC has taken, and would be willing to implement, in order to be removed from the Entity List.

6. Defendants have not acted on Plaintiffs' requests for removal from the Entity List. Nor have Defendants communicated to Plaintiffs any allegations of wrongful conduct. Despite Plaintiffs' good-faith engagement with the U.S. government over several years to address any concerns about Plaintiffs or their products, Defendants have never provided any guidance about how Plaintiffs can prove a negative—namely, that they do not "present[] a risk of diversion."

7. To understand Defendants' reasons and process for adding Plaintiffs to the Entity List, Plaintiffs jointly submitted two identical FOIA requests to Defendants on August 1, 2025: one to BIS's FOIA office and one to the Commerce Department's FOIA office. Those requests are attached hereto as **Exhibits A** and **B**, respectively.

8. Defendants have not provided any response to Plaintiffs' FOIA requests within (or after) the statutorily required 20 working days, other than emails acknowledging receipt of and assigning tracking numbers to Plaintiffs' requests. Therefore, Plaintiffs are seeking judicial intervention to require that Defendants comply with their obligations under FOIA, whose "basic purpose ... is to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).

9. Plaintiffs now respectfully request that this Court order the immediate disclosure of all responsive records that Defendants have unlawfully withheld or, in the alternative, set a schedule for rolling productions that begins promptly and with which Defendants must comply.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over this action and these parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

11. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

**PARTIES**

12. Plaintiff Yangtze Memory Technologies Company, Ltd. ("YMTC") is a leading developer and manufacturer of advanced 3D NAND flash memory and related storage technologies. Headquartered in China, YMTC also maintains a wholly owned U.S. subsidiary, Yangtze Memory Technologies, Inc. ("YMTI").

13. Plaintiff Yangtze Memory Technologies (Japan), Inc. ("YMTJ") is a corporate affiliate of YMTC that is based in Japan. YMTJ promotes YMTC products in Japan and South Korea and provides related technical support and customer service in those markets.

14. Defendant U.S. Department of Commerce is an agency of the United States Government, within the meaning of 5 U.S.C. § 552(f)(1), and headquartered in Washington, D.C. The Commerce Department has possession, custody, and control of records to which Plaintiffs seek access.

15. Defendant Bureau of Industry and Security ("BIS") is a component of the Commerce Department, an agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and headquartered in Washington, D.C. BIS has possession, custody, and control of records to which Plaintiffs seek access.

**FACTS**

**I.      Statutory and Regulatory Background**

16.     BIS maintains the "Entity List" pursuant to the Export Control Reform Act of 2018, 50 U.S.C. §§ 4801-4852, and related regulations.  According to BIS, the Entity List supposedly "identifies entities for which there is reasonable cause to believe, based on specific and articulable facts, that the entities have been involved, are involved, or pose a significant risk of being or becoming involved in activities contrary to the national security or foreign policy interests of the United States, pursuant to [15 C.F.R.] § 744.11(b)."  Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505, 77,505 (Dec. 19, 2022).

17.     BIS publishes the Entity List at Supplement No. 4 to Part 744 of Title 15 of the Code of Federal Regulations, as part of the Export Administration Regulations, commonly known as (and hereinafter referred to as) the "EAR."  *See generally* 15 C.F.R. pts. 730-774.

18.     According to BIS's public guidance, the EAR imposes additional license requirements on and limits the availability of most license exceptions for exports, reexports, and transfers (in-country) to listed entities.  *See also* 15 C.F.R. §§ 744.11, 744.16.

19.     When entities are added to the Entity List, BIS also determines a "license review policy" for those listed entities, to govern the review of any license application.  For listed entities, BIS most commonly determines a license review policy of "presumption of denial" for all items subject to the EAR.

20.     The procedures governing decisions about additions to and removals from the Entity List are promulgated at Supplement No. 5 to Part 744 of the EAR (hereinafter, "Supplement No. 5").  *See also, e.g.*, Authorization To Impose License Requirements for Exports or Reexports

to Entities Acting Contrary to the National Security or Foreign Policy Interests of the United States, 73 Fed. Reg. 49311, 49313 (Aug. 21, 2008) (promulgating original text of Supplement No. 5).

21. Supplement No. 5 provides that "the End-User Review Committee (ERC) … will make all decisions to make additions to, removals from or changes to the Entity List …." 15 C.F.R. pt. 744, Suppl. No. 5.

22. Regulations provide that entities may be added to the Entity List if there is "reasonable cause to believe, based on specific and articulable facts, that the entity … has been involved, is involved, or poses a significant risk of being or becoming involved in activities that are contrary to the national security or foreign policy interests of the United States." 15 C.F.R. § 744.11(b).

23. Supplement No. 5 also provides that the ERC will be chaired by the Department of Commerce and "composed of representatives of the Departments of Commerce, State, Defense, Energy and, where appropriate, the Treasury." *Id.*

24. Supplement No. 5 further provides that the ERC "will make all decisions to add an entry to the Entity List … by majority vote," and all decisions to remove or modify an entry by unanimous vote. *Id.*

25. Supplement No. 5 does not allow any individual member agency or group of member agencies to add an entity to the Entity List. Instead, Supplement No. 5 provides that "[a]ny agency that participates in the ERC may make a proposal for an addition to, modification of, or removal of an entry from the Entity List ... by submitting that proposal to the chairperson." *Id.* Supplement No. 5 further requires the ERC chairperson to circulate proposals to add, remove, or modify an Entity List entry to all member agencies for consideration and a majority vote. *See id.*

26. Supplement No. 5 establishes an internal escalation process in the event of inter-agency disagreement. If a member agency is not satisfied with the outcome of the ERC's majority vote, the agency may escalate the matter to the Advisory Committee on Export Policy ("ACEP"). *Id.* A member agency that is not satisfied with ACEP's decision may escalate the matter to the Export Administration Review Board ("EARB"). *Id.* Finally, a member agency that is not satisfied with the decision of the EARB may escalate the matter to the President of the United States. *Id.* "If at any stage, a decision by majority vote is not obtained" by the deadlines prescribed in certain Executive Orders, "the matter shall be raised to the next level." *Id.*

27. Supplement No. 5 clarifies that although decisions by the ERC, ACEP, and EARB must be made by majority vote, the decisions need not be unanimous. *See id.*

## II. Plaintiffs' Placement on the Entity List and Their Requests for Removal

28. On or around December 15, 2022, BIS issued a final rule (the "Final Rule") that added Plaintiffs (among other entities) to Commerce's "Entity List," effective the next day, based on a finding under 15 C.F.R. § 744.11(b). Plaintiffs were added with a license requirement for all items subject to the EAR and a license review policy of "presumption of denial" for all items subject to the EAR.

29. Plaintiffs did not receive advance notice of their placement on the Entity List.

30. The Final Rule was published in the Federal Register on December 19, 2022. *See* Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022).

31. The Final Rule added 36 entities to the Entity List: YMTC, YMTJ, and 34 other Chinese entities. *See* 87 Fed. Reg. at 77506-07.

32. The Final Rule stated that "[t]he ERC determined to add" every entity to the Entity List except for YMTC, YMTJ, and a third unrelated Chinese company. *See* Fed. Reg. at 77506-

07.  Although Plaintiffs (and the third unrelated company) were also added to the Entity List, the Final Rule did not state that the ERC determined to do so.  Instead, the Final Rule stated only that "[t]he agencies represented on the ERC determined to add" Plaintiffs (and the third unrelated company) to the Entity List.  *Id.* at 77506.

33. BIS's Entity List rulemakings published in the Federal Register rarely use the phrase "the agencies represented on the ERC" to identify the decision-makers responsible for adding a party to the Entity List.

34. The Final Rule did not explain why the ERC itself did not determine to add Plaintiffs to the Entity List.  The Final Rule also did not identify which "agencies represented on the ERC" determined to add Plaintiffs to the Entity List, or whether they made that determination in compliance with Supplement No. 5's majority vote requirement and internal escalation process.

35. The Final Rule further states that Plaintiffs were added to the Entity List "based on information indicating that these companies present a risk of diversion to parties on the Entity List, to include Huawei Technologies Co., Ltd., and Hangzhou Hikvision Digital Technology Co., Ltd." 87 Fed. Reg. at 77506.

36. Upon information and belief, the ERC received one or more proposals, likely with supporting documents, setting forth the reasons for placing Plaintiffs on the Entity List.

37. Upon information and belief, the proposal(s) to add Plaintiffs to the Entity List included inaccurate or misleading information furnished or disseminated, directly or indirectly, by one or more of Plaintiffs' competitors.

38. On June 26, 2024, Plaintiffs submitted requests to the ERC for removal from the Entity List, pursuant to 15 C.F.R. § 744.16(e).

39. YMTC's removal request stated that YMTC analyzed its business records and found no evidence of any transactions that violate the EAR; that its internal investigation had found no evidence of any unlawful or diversionary transactions; and that there were no legal or factual bases for the assertion that YMTC presented a "risk of diversion" to Huawei or Hikvision. YMTC's removal request also stated that it had responded to BIS's numerous requests for voluminous business records, including sales records and technical information; that the government had never conveyed any allegation of unlawful conduct by YMTC; and that therefore the evidentiary record made available to YMTC showed that, at all times, YMTC had fully and faithfully complied with the EAR and cooperated with U.S. authorities.

40. YMTJ's removal request stated its belief that it was added to the Entity List based solely on its relationship with YMTC. Accordingly, YMTJ's request attached and incorporated YMTC's removal request.

41. On May 19, 2025, in response to further questions about diversion risk, YMTC submitted a "white paper" to the ERC. This white paper detailed YMTC's history of commitment to U.S. export control compliance, as well as the comprehensive anti-diversion measures YMTC has taken, and would be willing to implement, in order to be removed from the Entity List.

### III.    Plaintiffs' FOIA Requests

42. On August 1, 2025, Plaintiffs submitted a FOIA request to BIS's FOIA office, via email and the Department of Commerce Freedom of Information Act Public Access Link website ("PAL") (https://foia-pal.commerce.gov). This request sought, *inter alia*, (a) communications and correspondence related to Plaintiffs or YMTI, from September 2020 through August 1, 2025, between any Commerce Department employee or official and any person not employed by the U.S. government; (b) communications and correspondence on any subject, from September 2020 through August 1, 2025, between any Commerce Department employee or official and any agent

of a specific competitor of YMTC; (c) records that would identify the "agencies represented on the ERC" that determined to add Plaintiffs to the Entity List (and related information), when they did so, and whether they were acting through the ERC, ACEP, or EARB by a majority vote; and (d) the administrative record underlying the decision to add Plaintiffs to the Entity List, analogous to the administrative record previously disclosed in unrelated litigation challenging a different party's addition to the Entity List. A true and correct copy of Plaintiffs' August 1, 2025 BIS FOIA request is attached hereto as **Exhibit A**. Later that same day, Defendants emailed Plaintiffs' counsel to acknowledge receipt and provide a tracking number of DOC-BIS-2025-000822 for this FOIA request.

43. Also on August 1, 2025, Plaintiffs submitted an identical FOIA request to the Department of Commerce's FOIA office via email and the PAL website. A true and correct copy of Plaintiffs' August 1, 2025 Commerce FOIA request is attached hereto as **Exhibit B.** Later that same day, Defendants emailed Plaintiffs' counsel to acknowledge receipt and provide a tracking number of DOC-OS-2025-001796 for this FOIA request. Then, on August 4, 2025, Defendants emailed Plaintiffs' counsel again and provided a second tracking number of DOC-OS-2025-001799 for this same request.

44. As of the date of this Complaint's filing, the PAL website reported statuses of "Assigned for Processing" for tracking numbers DOC-OS-2025-001796 and DOC-BIS-2025-000822.

45. Under FOIA, Defendants had 20 working days to furnish a determination of Plaintiffs' requests. *See* 5 U.S.C. § 552(a)(6)(A)(i)(I). As of the date of this Complaint's filing, Defendants have provided no determination of, or any other substantive response to, Plaintiffs' FOIA requests. Nor have Defendants requested any extension of time to respond or given

Plaintiffs written notice of any unusual circumstances warranting such an extension. *See id.* § 552(a)(6)(B).

46. Defendants' failure to provide any determination or other response about whether they will comply with Plaintiffs' FOIA requests serves to constructively exhaust Plaintiffs' administrative remedies. *See* 5 U.S.C. § 552 (a)(6)(C)(i); *Citizens for Responsibility & Ethics in Washington v. Federal Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) ("[I]f the agency has not issued its 'determination' within the required time period, the requester may bring suit directly in federal district court without exhausting administrative appeal remedies.").

47. Plaintiffs now seek an order requiring Defendants to release, in a timely manner, all requested records that have been unlawfully withheld, or agree to a reasonable rolling production schedule enforced by the Court.[1]

## CAUSE OF ACTION

**Violation of FOIA for Failure to Release Records Sought through Plaintiffs' Requests**

48. Plaintiffs incorporate by reference and re-allege Paragraphs 1-47.

49. Defendants have violated FOIA, 5 U.S.C. § 552(a), by failing to substantively respond to Plaintiffs' FOIA requests and failing to release the records requested.

50. Plaintiffs have constructively exhausted all necessary administrative remedies.

---

[1] A previously filed FOIA case, *Husch Blackwell LLP v. Department of Commerce*, No. 24-CV-2733-JDB (D.D.C.), still pending, concerns a FOIA request that seeks only the final proposal (and accompanying material) submitted to the ERC in support of the decision to place YMTC and YMTJ on the Entity List. Plaintiffs' own FOIA requests seek certain third-party communications over five years, the identities of the agencies that made the Entity List determination and related information, and the full administrative record (which includes, but is not limited to, the final proposal submitted to the ERC). *See generally* Exs. A & B. Because Plaintiff's FOIA requests encompass different documents, time periods, and people, Plaintiffs have not designated the other case as "related" within the meaning of Local Civil Rule 40.5(a)(3).

51. Plaintiffs have a legal right under the FOIA to obtain the information that they seek, and there is no legal basis for the denial by Defendants of said right.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

a) order Defendants to disclose the records requested;

b) set a schedule for producing the requested records to Plaintiffs;

c) award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

d) grant such other relief as the Court may deem just and proper.

Dated: September 3, 2025.

Respectfully submitted,

/s/ Murad Hussain
ARNOLD & PORTER KAYE SCHOLER LLP
Deborah A. Curtis (D.C. Bar No. 451716)
Murad Hussain (D.C. Bar No. 999278)
Dana Kagan McGinley (D.C. Bar No. 1781561)
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel: (202) 942-5000
Deborah.Curtis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Dana.KaganMcGinley@arnoldporter.com

*Attorneys for Plaintiffs*